# Columbia Bridge Co. *v.* Kline.*

[NOVEMBER, 1825.]

A party must bring forward the several parts of his case in their order; and although the court has power to relax the rule in this respect, its refusal so to do is matter of legal discretion, not subject to writ of error.

It is not error that in charging the jury, the court, after answering a point submitted affirmatively, proceeds to qualify it by stating that if the facts were different from those assumed in the point, the law would be otherwise. The question always is, not whether a party is deprived of the advantage gained by an artful representation of a part of the case, but whether the court has laid down sound law for the decision of the whole.

When an agreement is invalid from the unlawfulness of its consideration, any subsequent agreement, based upon it, is equally invalid.

Though a defence between the original parties to a bond may be waived in favour of an assignee for a valuable consideration, who is encouraged to part with his money, by the acts, declarations, or even the silence of the obligor, yet where there is more than one obligor, it should appear that all joined in the acts which are relied on as a waiver.

Where an act of assembly stipulated that a corporation, before enjoying certain immunities, should give security to the court of common pleas, in such cases and in such manner as the court may think proper to require for the faithful payment and redemption of all the notes by them issued; *held*, that the bond of the corporation alone was not sufficient security within the act.

A corporation cannot maintain an action on a bond taken by it, or assigned to it, unless it be for a debt contracted in the course of its legitimate operations, and for an object finally promotive of the purpose for which it is incorporated; but such corporation would have a right to take a bond, or the assignment of a bond, for moneys advanced for the purposes of its constitution, or for any other object fairly promotive of the views and intentions for which the company was incorporated.

A corporation may be a trustee.

THE facts of this case sufficiently appear in the opinion of the court.

---

* This case was not reported at the time in consequence of a doubt, entertained by Chief Justice Tilghman, of the propriety of touching the question, of a corporation's capacity to hold in trust; but he, as well as Mr. Justice Duncan, fully concurred on all the other points.

[ Columbia Bridge Co. *v.* Kline. ]

The case was argued by *Mr. Hopkins,* for plaintiff in error, and *Mr. Buchanan,* for defendant in error.

GIBSON, J.—Taking for granted that the evidence contained in the bill of exceptions was intrinsically competent to rebut what had come from the other side, the question is, was it offered in season? It was not produced till the party offering it had rested the evidence, on his part, at two different stages of the trial, after the reception of the evidence which it was proposed to rebut. He therefore had waived the benefit of it by not producing it at the proper time; after which the court was not bound to admit it. A party must bring forward the several parts of his case in their order, and although the court has power to relax the rule in this respect, it may refuse to do so; and the exercise of what is matter of legal discretion cannot be made the subject of error.

The remaining exceptions are to the opinion of the court on points submitted by counsel.

The bond on which this suit is brought was substituted for another which had been given for a part of the price of sixty acres of land, purchased by Jacob Kline, Isaac Ruth, and Isaac Mingle, at the enormous price of $50,000, with a view to reimbursement by dividing the whole into lots, and disposing of them by a lottery; and, in reference to this stage of the transaction, the court was requested by the counsel of the plaintiff to charge, that if Mifflin, the vendor, knew of the intention of the purchasers to make the property the subject of a lottery, it would furnish no objection to the recovery of the purchase money. This proposition was adopted by the court; but on a point made by the other side, the jury were at the same time instructed that if there was an agreement that the vendor should participate in the profits of the lottery, the whole contract would be illegal; and that neither he nor his assignee could recover. The objection made, is not to the sound-

[ Columbia Bridge Co. *v.* Kline. ]

ness of this direction, but to the manner of stating it, the counsel contending that he was entitled to have the opinion of the court separately and distinctly on the facts, as he had submitted them, without regard to other facts that might be supposed to exist in connexion with them. The opinion of the court was, in fact, separately delivered on the facts as they were propounded, although the judge, immediately afterwards, stated the law as it would arise out of them mingled with other facts which it was supposed might possibly be deduced from the evidence. But even were it otherwise, it would be preposterous to reverse for such a reason. It is the business of the court to furnish rules of decision applicable to every combination of the facts that may result from the evidence; and the question always must be, not whether a party has been deprived of the advantage likely to be gained by an artful representation of a part of the case, but whether the court has laid down sound law for the decision of the whole of it. To say that any thing else is error, would put an end to all fairness in trials.

The counsel for the plaintiff further requested the direction of the court, that the second bargain between the vendor and the purchasers, superseded the first, and consequently, that the rights of all parties were to be determined by it exclusively. The court did so direct, but added, that as the bond on which the suit is brought was given in lieu of a former bond executed for a part of the original purchase money, the question whether the consideration of it was legal, would still depend on the circumstances of the original transaction; and that the second bond would be affected by any thing that would have affected the first. I perceive no error in this. No doubt an entirely new contract, on a new consideration, and for a lawful purpose, would have been binding; but that there was such a thing, I do not understand it to be seriously pretended. The transaction in the presence of Mr. Barnitz, was evidently

[ Columbia Bridge Co. *v.* Kline.]

nothing more than a modification of the original bargain, which, if made in despite of the acts of assembly for the suppression of lotteries, would not admit of confirmation by a subsequent agreement on the same basis, or one that should look to the attainment of any object which, at the time of the original bargain, was unlawful. The canker at its core would be incurable. The validity of the second bond, therefore, would depend on the circumstances which might affect the first; this is established by *Duncan* v. *McCullough,* 4 S. & R. 483, and the cases there cited.

The next ground of exception is the omission to charge that, although the vendor should be proved to have remitted a part of the bond, the jury ought nevertheless to find the amount of the penalty, to enable him to have execution for the sum actually due. It is obvious that this could have had no effect on the merits, for no jury is so dull, as not to know that the release of part of a debt, is not a release of the whole; and an exception of the sort ought therefore to receive no favour. But the position is not maintainable, that the plaintiff in an action of debt on the act of assembly, to recover a sum due by bond, is entitled to a verdict and judgment for the penalty, as at the common law. By the express provisions of the act he is required, in stating his demand, to go for the precise sum which he believes to be recoverable; and in case of recovery, the verdict and judgment is for the sum ascertained to be due. The counsel therefore had no right to a direction such as was required.

Again, the court was desired to charge, that if the jury should be of opinion that a bond of Jacob and George Kline for $1,178, borrowed for the use of the obligors, and a note of Jacob Kline, endorsed by Herr, for $800, were satisfied out of the money advanced by the plaintiffs, as the consideration of the assignment; and further, that the obligors received $300, out of the money so advanced for

the purpose of paying off incumbrances, so that they might be enabled to execute their agreement with Mifflin, the assignor, then the defendants would be precluded from setting up, against the assignee, any defence which they might have set up against the assignor; and for not having so directed the jury, exception is taken. It is clear, however, that these circumstances alone would not be decisive. A defence between the original parties may doubtless be waived in favour of an assignee for valuable consideration, who is encouraged to part with his money by the acts, declarations, or even the silence of the obligor. But when there are two or more obligors, it should appear that all joined in the acts which are relied on as a waiver. Now, it is no part of the proposition, that Herr, who was a surety, and could not be deprived of his defence without his assent, or indeed that any of the others in particular, participated in the acts which are alleged to be a waiver; and such participation, the jury were very properly instructed, was absolutely necessary to constitute a waiver that would affect all the defendants.

The next exception is, that the court refused to direct the jury to consider the acts of Kline, the principal obligor, and Mifflin the obligee, as the acts of Herr, the surety, although the latter may not have known of or assented to them. This proposition is so extravagant in itself, that particular remarks on it are unnecessary.

Thus far I have considered the points in the cause separately; not because I think them worthy of discussion, but because of the magnitude of the contest, rather than the difficulty of the law. What remains is more important.

The counsel for the defendants desired the court to direct the jury, that the plaintiff could not maintain an action on this bond. First, because it has not authority under the act of incorporation to purchase bonds: secondly, because the act of the 24th of February, 1820, which was passed to enable it to recover debts due to it, embraces debts due

[Columbia Bridge Co. *v.* Kline.]

which were contracted only in the course of its banking operations, to which class this particular debt does not belong: and, thirdly, because, if that act does embrace this debt, yet the preliminary security which it requires of the plaintiff has not been given. The court was of opinion, that the debt was not within the purview of the act, both because it was not intended to operate on debts for which suits were then depending, and because the transaction in question was not a banking operation, and therefore not forbidden by the 13th section of the act of the 21st March, 1814, the severity of which the act of 1820 was intended to mitigate; but that if it were within these two acts, the plaintiff had given sufficient security according to the true intent of the third section of the latter, by filing its own bond agreeably to the order of the court of common pleas of Lancaster county; and, finally, that independently of these acts, the plaintiff could not maintain an action on a bond taken by it, or assigned to it, unless it were for a debt contracted in the course of its legitimate operations, and for an object promotive of the purpose for which it was incorporated.

It does not appear that any previous debt existed; but the transaction seems to have been an investment of the funds of the corporation without any peculiar or distinctive circumstance. Whether it was a banking operation, depended on facts which were for the determination of the jury, and of which we could but imperfectly judge, if it were our province to do so. The section of the act of 1814 prohibits the issuing of the notes of individuals or of corporations instituted for other than banking purposes; and declares, that notes discounted, and " contracts relative to business, usually done by banking companies, which shall be done by, or made with unincorporated banks, individuals, or corporations for other purposes," shall be absolutely void. Now, the business done by banks consists in issuing notes payable to bearer, which pass by delivery as cash, in discounting notes, and in receiving deposits.

[ Columbia Bridge Co. *v.* Kline. ]

Judge SPENCER is of opinion that the principal attributes of a bank are comprised in its right to do these things; *The People* v. *The Utica Insurance Company,* 15 Johns. 390. But these are separate operations, which do not all concur in the same transaction; and either of them may or may not, according to circumstances, be a breach of the act of assembly. A bank may refuse to receive deposits, and may yet be a banking institution for every other purpose. So, instead of an accommodation note, it may require a bond or single bill, in which, those who in the usual course, pledge their responsibility for the borrower, by endorsing his note, are bound as principals; and some banks in this state have actually adopted that form of security. Nor, on the other hand, could an unlawful banking company elude the provisions of the act by pursuing the same course. The issuing of any but the notes of incorporated banks, was the principal mischief intended to be restrained, and where such notes are not paid in discharge of an existing debt, but are advanced on a credit or security of any kind, that alone will stamp the transaction with criminality. But although the court inclined to think the transaction was not a banking operation, it left the facts to the jury, with a direction that if they should be of opinion that it was such a transaction, then the plaintiff's case would not be borne out by the act of 1820, which was not intended to affect the rights of parties in suits then depending.

In this I heartily concur. The impolicy and injustice of *ex post facto* laws are so glaring, that no upright judge will believe that the legislature intended to divest or impair existing rights, unless where an intention to do so is so palpable as to force itself on the attention. What is the language of the legislature on the subject before us? "Before the said company shall be enabled to recover under this act, it shall be its duty to give security to the court of common pleas of Lancaster county, in such sum and in such manner as the said court may think proper to require,

[Columbia Bridge Co. *v.* Kline.]

for the redemption of its notes in circulation." Now security given, either before or after suit brought, is a compliance with the letter of the act, and therefore it stands indifferent, as regards the expressed intention of the legislature, at what time it is given, so that it be before recovery; but does it stand indifferent as respects the justice of the case? It must appear clearly that the legislature intended to subject these defendants to costs which accrued when they had a defence, before an intention to do so will be imputed to them; and in this respect our case is quite as strong as *Bedford* v. *Shilling*, 4 S. & R. 401.

But I by no means concur that the bond of the plaintiff alone is security, within the true intent and meaning of the act. The common pleas of Lancaster county doubtless had unlimited discretion in determining the amount of the security, and the form in which it should be taken; but here its power over the subject ended. It could not dispense with substantial security of some sort. Now I will not stop to consult the lexicographers for the meaning of the word "security;" we know what it means in the common parlance and transactions of the world, and in what sense it has for the most part been used by the legislature. No one can shut his eyes so as not to see that the object of this section was to require substantial responsibility in addition to that of the plaintiff, for the payment of its own debts, before it should be permitted to collect its debts from others; not to require it to give a bond in addition to its notes, which would be quite as beneficial to the holder. This, then, was an error; but one which was in favour of the plaintiff, who for that reason is precluded from making it a ground of reversal.

Then laying the acts of 1814 and 1820 entirely out of the case, the remaining inquiry will be, whether the court was right in its opinion as to the right of the plaintiff to take an assignment of this bond under the act of incorporation.

[ Columbia Bridge Co. *v.* Kline. ]

It is said, particularly in the case of *Sutton's Hospital*, 10 Rep. 31, that to every general corporation the law tacitly annexes certain incidents; such as capacity to sue and be sued, to purchase land, and to do almost all other acts as natural persons may. But this must be understood of acts that are within the scope of the business or duties which the corporation was created to perform. The law annexes no power as inherent, and therefore existing independent of the particular provisions of the charter. A corporation being the creature of the legislature, derives all its powers from the act of its incorporation, and such incidents as are tacitly annexed to it, are those implied powers which are necessary to the ends of its existence. The legislature may, if it will, constitute an artificial body for no particular purpose, and endow it with the attributes of a natural person; but, in this country, corporations are never created but for specific objects, and with capacity commensurate to their duties. To assume for them any greater capacity would be a fraud on the legislature, which otherwise might be erecting an insurance office, whilst it supposed it was incorporating a church, or in place of an hospital, it might be creating a bank. But every affirmative grant, implies a negative as to the grant of any thing else, and therefore a corporation for a specific purpose is no corporation for any other purpose, and consequently can, for such other purpose, do no corporate acts to affect its own rights or those of other persons. In a word, it is recognised as having a political existence only when it is viewed in a particular aspect. It is a question not altogether settled, whether a corporation can be a trustee: and although the weight of authority seems to be in favour of the affirmative, I cannot accede to the reasoning of the judge who delivered the opinion of the supreme court of Massachusetts, in *The Trustees of Phillips Academy* v. *King*, 12 Mass. 555, and who thought that to affirm that a corporation has not capacity to hold in trust because its inte-

rest and duties cannot be involved in the execution of a trust, would beg the question. In *Jackson* v. *Hartwell*, the supreme court of New York thought differently. On the grounds of authority, however, I would incline to the opinion held in Massachusetts, for although on the enactment of the statute of uses, it was held, that no one could be seized in trust, who could not be seized to a use; 1 Cruise's Dig. Trust, ch. 1, § 68, yet in later times we find, that devises to corporations in trust are held good. *Green* v. *Rutherforth*, 1 Ves. Rep. 462; *Kildare* v. *Eustace*, 1 Vern. 405; *Felstead Hospital* v. *Foach*, 2 Vern. 410. But, however this may be, it cannot shake a principle so deeply founded in reason as that which I have stated, and one which is recognised in *Head* v. *The Providence Insurance Company*, 2 Cranch 166; *Wales* v. *Stetson*, 2 Mass. 143; *Denton* v. *Jackson*, 2 Johns. Ch. 325; *Jackson* v. *Hartwell*, 8 Johns. 422; and more distinctly in *The People* v. *The Utica Insurance Company*, 15 Johns. 384. But with this principle, the charge of the court below was in strict accordance. The jury were directed that the corporation would have no right to purchase lands or discount notes; " but that it would have a right to take a bond, or the assignment of a bond for moneys advanced for the purpose of the institution; or for any other object fairly promotive of the views and intentions for which the company was incorporated. This is an accurate statement of the law applicable to the subject generally; and if a particular exposition of it in reference to the special facts in evidence had been desired, the point arising on these facts should have been suggested. But there was nothing in the case to make it an exception from the general rule. The plaintiff is invested with powers, common to most bridge companies, to increase its capital if it should be found necessary, to accomplish the object, by creating additional shares; and to divide the profits, after deducting a sum deemed necessary as a contingent fund, to rebuild or repair the bridge, as accident or

w

[ Columbia Bridge Co. *v.* Kline.]

decay might render it necessary. A construction which should require this fund to be kept in the coffers of the company would be unnecessarily severe. It might, without doubt, be put out at interest, as usual with the surplus capital of insurance companies, provided it were done *bonâ fide*, and not to give colour to transactions which are foreign to the business of the corporation. Had such been the nature of the investment in the case before us, the legality of it could not be questioned. But no point founded on the supposed existence of circumstances, sufficient to take the case out of the general rule, was made for the opinion of the court; and it is probable that none such resulted from the facts given in evidence. The charge, therefore, was in every respect unexceptionable.

On a full consideration of all the points in .the case, it is the opinion of this court, that there is no error in the record. Judgment affirmed.*

---

* The question of the right of a corporation in Pennsylvania, to hold property in trust, was considered and determined by the supreme court of the United States, in *Vidal* v. *Girard's Executors*, 2 How. 129, where it was ruled that the corporation of the city of Philadelphia has power, under its charter, to take real and personal estate by deed, and also by devise, inasmuch as the statute of 32 & 34 Hen. VIII., which excepts corporations from taking by devise, is not in force in Pennsylvania. And where a corporation has this power, it may also take and hold property in trust in the same manner and to the same extent that a private person may do: if the trust be repugnant to, or inconsistent with, the proper purpose for which the corporation was created, it may not be compelled to execute it, but the trust, (if otherwise unexceptionable) will not be void, and a court of equity will appoint a new trustee to enforce and perfect the objects of the trust.